**Karl G. SCHOEMER, Appellant–Defendant,**

v.

**HANES & ASSOCIATES, INC., Appellee–Plaintiff.**

No. 49A02–9703–CV–203.

Court of Appeals of Indiana.

April 14, 1998.

Arend J. Abel, Mark R. Waterfill, Leagre Chandler & Millard, Indianapolis, for Appellant–Defendant.

Christopher L. Garrison, Garrison & Kiefer, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Karl G. Schoemer, ("Schoemer"), appeals the judgment entered against him in the amount of $6,830.00 in favor of Appellee–Plaintiff Hanes & Associates, Inc., ("Hanes"), after a bench trial. Hanes cross-appeals asserting that he is entitled to an additional $2,481.50. We affirm.

## Issues

Schoemer raises three issues. Restated, they are:

I. Whether Schoemer is entitled to the statutory damages contemplated by IND. CODE § 22–2–5–1 for the alleged nonpayment of wages.

II. Whether Schoemer was entitled to retain the $11,370.00 commission paid with respect to the sale of training courses to Citizen's Gas.

III. Whether the trial court erred by not finding that Schoemer was entitled to additional compensation from Hanes.

Hanes raises one issue on cross-appeal. Restated, it is:

IV. Whether the trial court abused its discretion in granting Schoemer's motion to correct error which, in effect, denied Hanes' motion to amend his complaint to request additional damages.

## Facts

The operative facts are virtually undisputed. A summary of the evidence most favorable to the trial court's judgment follows. Hanes & Associates, Inc. is the central Indiana licensee of Dale Carnegie & Associates, Inc. and offers various Dale Carnegie courses on leadership and management. Steven Hanes is the President and Chief Executive Officer of Hanes & Associates, Inc. Hanes hired Schoemer as a "Training Consultant" under the terms of a written contract which provided in pertinent part as follows:

C. The Training Consultant hereby acknowledges that he/she is an independent contractor for Hanes & Associates, Inc. . . . .

D. As an independent contractor, the Training Consultant:

1. Is paid strictly on commission;

2. Is considered self-employed, and therefore;

a. Will have no County, State or Federal Income taxes withheld and must fulfill this obligation himself/herself;

b. Will have no Social Security taxes withheld from his commission and must fulfill this obligation himself/herself;

c. Will have no State Disability Insurance (SDI) premium withheld from his commission . . .;

d. Will have no unemployment insurance premium withheld . . .;

e. Is not covered by the Workers Compensation Act. . . .

■ As an independent contractor, the association with Hanes & Associates, Inc. can be terminated at will by either party.

Schoemer's primary responsibility was to generate (or sell) enrollments for the Dale Carnegie training courses offered by Hanes. Commissions were paid to Schoemer on "paid enrollments" on the 15 and 30 of each month. The contract provided that any refunds that Hanes was required to make to customers were to be subtracted from Schoemer's next pay period. The employment contract also provided as follows:

F. In the event of termination, [Schoemer's] final check will be withheld until all outstanding leads, account files, office supplies, equipment, training material and/or selling aids are returned to [Hanes].

G. In the event of termination, either voluntary or involuntary, [Schoemer] will be paid for all completed enrollments he/she has sold up to the date of termination. After that [Schoemer] will be paid only once more. The final pay will be made at the next regular end-of-the-month payday which is at least 30 days away from [Schoemer's] termination date. At the final payday, all completed enrollments will be paid for, as well as the appropriate commission rate on all money collected for pending enrollments, minus any 'buybacks', cancellations, etc. After this final pay, the company will absorb any buybacks, cancellations, etc., normally charged to [Schoemer] and, likewise, will get credit for any future monies collected on [Hanes'] pending enrollments.

Finally, the contract also provided:

If legal action is necessary to enforce the terms and conditions of this agree-

ment,.... The prevailing party in any such action shall be entitled to recover all costs of suit and reasonable attorney's fees as determined by the court.

In the latter part of 1993, Schoemer sold a customer relations training course to Indiana Gas for $45,480.00. On November 18, 1993, Citizen's Gas paid Hanes for the course. Hanes terminated his association with Schoemer on December 4, 1993. By letter dated December 7, 1993, Hanes confirmed the termination and informed Schoemer that his "final paycheck would be sent on the 30th of next month." On December 21, 1993, Hanes paid Schoemer the $11,370.00 commission on the sale to Citizen's Gas. Hanes explained that, although the contract (and December 7, 1993 termination letter) provided that Schoemer's final paycheck would not be due until January 30, 1994, Hanes wanted Schoemer to have the money before the holidays.

In early January of 1994, Citizen's Gas canceled its order and demanded a refund. Hanes immediately refunded $33,610.00 representing the purchase price, less $500.00, and less the $11,370.00 commission paid to Schoemer ($45,480.00 − $500.00 − $11,370.00 = $33,610.00). Hanes demanded that Schoemer refund the $11,370.00 commission. Schoemer refused. Ultimately, Hanes provided Citizen's Gas with scholarships for his courses worth in excess of the $11,370.00 balance due on the refund.

On May 17, 1994, Hanes filed the present lawsuit against Schoemer seeking recovery of the $11,370.00 commission. Schoemer counterclaimed asserting that Hanes owed him additional commissions and expenses as provided under the contract along with the treble damages, attorney fees, and costs provided by IND.CODE § 22–2–5–2 for the failure to pay wages.

All issues were tried to the bench. Hanes conceded that he owed Schoemer an additional $4,540.50. In addition to the $4,540.00 amount, Schoemer asserted that he was due approximately $3,000.00 more from Hanes for unpaid commissions and unreimbursed expenses. However, this evidence was vigorously disputed by Hanes who established through cross-examination that many of the

class enrollments for which Schoemer claimed an entitlement compensation were paid after Schoemer's final pay date as that date was defined in the contract. Also, Hanes established that Schoemer had not been entitled to some of the compensation that he demanded due to "make-ups, no-shows, scholarships, partials and repeats" for which a Training Consultant did not earn commissions. Finally, Hanes established that the training classes in question did not have as many students or graduates as Schoemer had asserted.

Also at trial, Hanes requested that Schoemer be required to repay an additional $2,482.00 representing amounts that Hanes had overpaid Schoemer. Schoemer objected to the evidence of these overpayments on the ground that Hanes had not requested this relief in his complaint. The trial court permitted Hanes to introduce the evidence after Hanes explained that it was relevant to show that his paper work was not as sloppy as Schoemer had asserted.

On July 18, 1994, the trial court entered judgment in favor of Hanes in the amount of $9,311.50 representing the $11,370.00 Citizens Gas commission, plus the additional $2,482.00 in overpaid commissions, less the $4,540.50 concededly owed to Schoemer ($11,370.00 + $2,482.00 − $4,540.50 = $9,311.50.) The trial court also determined that Hanes would be awarded a reasonable attorney fee as provided under the contract, and that another hearing would be held to determine the appropriate amount.

Schoemer filed a Motion to Correct Error asserting, among other claims, that Hanes could not be awarded the additional $2,482.00 because he had not requested that relief in his complaint. The trial court granted Schoemer relief in part, reducing Hanes' judgment to $6,830.00 representing the $11,370.00 commission less the $4,540.00 (rounded down) owed to Schoemer ($11,370.00 − $4,450.00 = $6,830.00). (R. 383). This appeal, and cross-appeal, followed.

**Discussion and Decision**

*Standard of Review*

On appeal of a bench trial, the appellate court will not set aside the judgment

unless it is clearly erroneous. Ind.Trial Rule 52(A). Trial court findings are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Matter of Estate of Burmeister*, 621 N.E.2d 647, 649 (Ind.Ct.App.1993). In determining whether the trial court's findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.* When the trial court enters findings on its own motion (as in the present case), specific findings control only as to issues they cover while a general judgment standard applies to any remaining issue. *Id.* The reviewing court will affirm if the judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993), *trans. denied.*

### I. Statutory Damages under I.C. § 22-2-5-2

■ Schoemer asserts that Hanes paid him the Citizens Gas commission late, and entirely failed to pay him the additional commissions he had earned before the litigation ensued. Thus, Schoemer argues the trial court erred by not awarding him the statutory damages provided by I.C. § 22-2-5-2 for the nonpayment or late payment of wages to employees.

■ However, the relief available under I.C. § 22-2-5-2 is available only to employees and not independent contractors. *Mortgage Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 495 (Ind.1995). In contrast to employees, independent contractors control the method and details of their task and are answerable to the principal as to results only. *Id.* Generally, whether one acts as an employee or an independent contractor is a question of fact based on several factors. *Id.* at 495-96. While the parties' clear expression of intent to create an independent contractor relationship by written contract is significant, it is not dispositive and an employer-employee relationship may be found despite the parties' designation of independent contractor status if enough of the indicia of an employer-employee relationship exists. *Id.* at 496.

In the present case, the trial court specifically found that Schoemer was an independent contractor. This finding is amply supported by the evidence of the parties' written contract (as set out above) which expressly and unequivocally provided that Schoemer was an independent contractor and would be paid strictly by commissions. *See id.* As the trial court's determination that Schoemer was an independent contractor and not an employee is not clearly erroneous, the trial court did not err by declining to award Schoemer the damages contemplated by I.C. § 22-2-5-2.

### II. Citizen's Gas Commission—Interpretation of Contract

#### Standard of Review

■ We begin our analysis by noting that our supreme court has expressed its commitment to advancing the public policy in favor of enforcing contracts. *See Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind.1995). Indiana courts recognize that it is in the best interest of the public not to unnecessarily restrict persons' freedom to contract. *Id.* Thus, as a general rule, the law allows persons of full age and competent understanding the utmost liberty in contracting; and their contracts, when entered into freely and voluntarily, will be enforced by the courts. *Pigman v. Ameritech Publishing Inc.*, 641 N.E.2d 1026, 1029 (Ind.Ct.App.1994). Accordingly, Indiana has long adhered to the rule that contracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy. *Id.* at 1030.

■ Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. *George S. May International Co. v. King*, 629 N.E.2d 257, 260 (Ind.Ct.App.1994), *trans. denied.* If a contract is ambiguous or uncertain and its meaning is to be determined by extrinsic evidence, its construction is a matter for the fact finder. *Bicknell*

*Minerals, Inc. v. Tilly,* 570 N.E.2d 1307, 1310 (Ind.App.1991), *trans. denied.* If, however, an ambiguity arises because of the language used in the contract and not because of extrinsic facts, its construction is purely a question of law to be determined by the court. *Id.* In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. *Id.* at 1313. The contract is to be read as a whole when trying to ascertain the intent of the parties. *Id.* The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* at 1316. Finally, the court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. *Id.*

### The Final Pay

■ As set out more completely in the **FACTS** section, the pertinent part of Schoemer's Training Consultant contract reads:

> In the event of termination, either voluntary or involuntary, [Schoemer] will be paid for all completed enrollments he/she has sold up to the date of termination. After that [Schoemer] will be paid only once more. *The final pay will be made at the next regular end-of-the-month payday which is at least 30 days away from [Schoemer's] termination date. At the final payday, all completed enrollments will be paid for, as well as the appropriate commission rate on all money collected for pending enrollments, minus any 'buybacks', cancellations, etc.. After this final pay, the company will absorb any buybacks, cancellations, etc.,* normally charged to [Schoemer] and, likewise, will get credit for any future monies collected on [Hanes] pending enrollments.

(emphasis added).

Schoemer argues that the last date Hanes paid him was December 21, 1993, and therefore, Hanes was required under the contract to absorb the Citizen's Gas cancellation. We, as did the trial court before us, disagree.

In the present case, Schoemer's association with Hanes was terminated in early December 1993. Thus, Hanes contended, and the trial court specifically found, that the critical date for Schoemer's final pay as that term was defined in the contract was January 30, 1994, the next regular end-of-the-month payday which was at least 30 days after the termination date. Thus, as Citizens Gas canceled its order and demanded a refund before Schoemer's final pay date, the trial court correctly determined that Schoemer was required to return the $11,370.00 commission to Hanes.

### III. Additional Compensation

Schoemer also asserts that uncontroverted evidence established that he was due approximately $3,000.00 in addition to the $4,540.00 Hanes conceded was owing. Schoemer's assertion that the evidence was uncontroverted is not well-taken. As discussed in the **FACTS** section, the evidence on this matter was hotly contested and Hanes submitted ample evidence which undermined Schoemer's claims. Thus, we cannot conclude that the trial court's judgment that Schoemer was not entitled to additional compensation was clearly erroneous.

### IV. Hanes' Cross–Appeal—Amendment of Pleadings

■ As discussed earlier, Hanes submitted evidence at trial that, in addition to the Citizens Gas Commission, Schoemer had been overpaid additional amounts and should be required to reimburse Hanes for those overpayments. Schoemer objected to this evidence on the basis that Hanes had made no claim to these amounts in his complaint. Although the trial court initially awarded Hanes these amounts, it deducted them from Hanes' judgment after Schoemer filed a motion to correct error. Hanes argues the issue of the overpayments was tried by the implied consent of the parties, and thus should be treated as if the issue had been raised in the pleadings.

*Standard of Review*

 **(B) Amendments to conform to the evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court *may* allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Ind.Trial Rule 15 (emphasis added). The term "may" ordinarily indicates a permissive condition and discretion. *Williams v. City of Indianapolis,* 558 N.E.2d 884, 887 (Ind.Ct. App.1990), *trans. denied.* On appeal of a trial court's decision to permit or deny a request to amend the pleadings to conform to the issues actually litigated at trial, this court is limited to a determination of whether the trial court abused its discretion. *Lewis v. Davis,* 410 N.E.2d 1363, 1366 (Ind.Ct.App. 1980); *But see Bank of New York v. Bright,* 494 N.E.2d 970, 974 (Ind.Ct.App.1986) (the trial court must allow the amendment unless the objecting party can demonstrate that he will suffer prejudice in his prosecution or defense of the action).

*Whether the trial court was required to permit the amendment*

 The purpose of T.R. 15(B) is to provide some flexibility in litigating a case, and to promote justice by permitting evidence brought in at trial to determine the liability of the parties. *Baker v. Midland–Ross Corporation,* 508 N.E.2d 32, 37 (Ind.Ct.

App.1987), *trans. denied.* When evidence is presented that does not conform to the pleadings, the party opposing the evidence must object or the issue supported by the evidence will impliedly be consented to be tried by that party. *Joy v. Chau,* 177 Ind. App. 29, 377 N.E.2d 670, 676 (1978). However, a new issue may not be interjected under the pretense that the evidence was relevant to some properly pleaded matter. *Baker,* 508 N.E.2d at 36; *See also, Aldon Builders, Inc. v. Kurland,* 152 Ind.App. 570, 284 N.E.2d 826, 832 (1972).

In the present case, Schoemer objected at trial to the interjection of the present issue regarding the additional amounts allegedly due Hanes. Hanes responded to the objection by arguing that the evidence was relevant to show that his record keeping was not as sloppy as Schoemer had asserted. The trial court overruled Schoemer's objection on this basis. However, by granting Schoemer relief on his motion to correct error, the trial court, in effect, sustained Schoemer's objection to the interjection of the issue not raised in the pleadings. *See Chance v. Chance,* 400 N.E.2d 1207, 1211 (Ind.Ct.App.1980) (where objection is sustained to an attempt to interpose a new legal theory at trial, such matter was not tried by consent as provided under T.R. 15(B)). Under these circumstances, we cannot conclude that the trial court abused its discretion by refusing to permit Hanes to amend his complaint to seek recovery of the additional amounts allegedly owed by Schoemer.

Affirmed.

HOFFMAN and DARDEN, JJ., concur.