Noah BAILEY, Appellant–Plaintiff,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Appellee–Defendant.

No. 88A01–0707–CV–306.

Court of Appeals of Indiana.

Feb. 28, 2008.

Daniel L. Brown, Allen, Allen & Allen, Salem, IN, Attorney for Appellant.

Kenneth G. Doane, Jr., George A. Budd, V, Ward, Tyler & Scott, LLC, New Albany, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Noah Bailey appeals following a jury trial at which the jury found for the defendant below, State Farm Mutual Automobile Insurance Company ("State Farm"). Bailey raises two issues, which we restate as whether the trial court abused its discretion in denying Bailey's Motion to Conform Pleadings to the Evidence and in refusing to give Bailey's tendered instruction regarding a theory of negligent entrustment. Concluding that the trial court did not abuse its discretion in either regard, we affirm.

### Facts and Procedural History

██ On July 3, 1998, Bailey and Matt Caudill set off in Bailey's pickup truck to go to a quarry to buy gravel for Caudill's driveway. Based on Caudill's testimony,[1] at some time in the morning, they stopped at a bar and watched bull riding for roughly an hour, and consumed "some alcohol," and "might have" taken some beer with them from the bar. Transcript at 7. After arriving at Caudill's house, the two were "drinking beer," and then decided to go on "what [they] called a road trip, just driving around talking." *Id.* at 8. They then drove to a bar in Medora where they ate lunch and Caudill "believe[s]" they consumed

---

1. When he requested the transcript of the trial, Bailey requested only that part of the transcript relaying Caudill's testimony. State Farm argues that Bailey has therefore provided a deficient record and waived some or all of the issues. Although we recognize the incomplete nature of the record, this court has repeatedly espoused a policy against invoking waiver when possible to address issues on their merits. *E.g. Collins v. State,* 639 N.E.2d 653, 655 n. 3 (Ind.Ct.App.1994) (although party cited no authority in support of his argument, court addressed issue based on "strong preference to decide issues on their merits"), *trans. denied.* We will therefore address Bailey's arguments as best we can through our examination of the portion of the trial record provided. *Cf. In re Walker,* 665 N.E.2d 586, 588 (Ind.1996) (recognizing the cost associated with preparing transcriptions, and clarifying that "[a]lthough not fatal to the appeal, failure to include a transcript works a waiver of any specifications of error which depend upon the evidence.").

State Farm also points out that Bailey has referenced materials that were not introduced at trial and improperly included such materials in his appendix. "The appellate rules do not permit material to be included in a party's appendix that was not presented to the trial court." *In re Contempt of Wabash Valley Hosp., Inc.,* 827 N.E.2d 50, 57 n. 6 (Ind.Ct. App.2005). Specifically, State Farm complains that Bailey has included several motions and trial court orders that were filed before State Farm became a party to this lawsuit. As our appellate rules instruct a party to include, among other things, "pleadings and other documents from the Clerk's Record in chronological order that are necessary for the resolution of the issues raised on appeal," Ind.App. Rule 50(A)(2)(f), we find it difficult to fault Bailey for including such motions and orders. However, to the extent that these documents contain argument or factual allegations unsupported by actual evidence before the trial court, we will not consider such statements in our resolution of the issues. *See Chesterfield Mgmt., Inc. v. Cook,* 655 N.E.2d 98, 101 (Ind.Ct.App.1995) ("Factual material which was not part of the record in the trial court cannot be made part of a case on appeal merely by including it in an appendix to a party's brief."), *trans. denied.*

more alcohol. They then returned to Caudill's home where Caudill mowed his grass with a riding lawn mower he had borrowed from his sister. After finishing, he decided to drive the mower back to his sister's house, as it was not possible to get the mower into Caudill's truck. Apparently, Bailey followed in Caudill's truck. On the way, the two came upon a mutual friend, Troy Roop, who was mowing his lawn, and Caudill stopped to help. After Roop and Caudill finished mowing, the three sat and talked for "maybe fifteen minutes." *Id.* at 15. Caudill could not recall if the three consumed any alcohol. Caudill then proceeded to his sister's house, where he mowed her grass until Bailey arrived roughly ten or fifteen minutes later. Caudill got in his truck, and Bailey set off for Caudill's house. Caudill described the accident as follows:

> So as we were coming down the hill, Rush Creek Road right before you get to the greenhouses it cuts a little back to the left as you're going down the hill and the passenger side tire got off in the grass just a little bit and then [Bailey] had been overcorrecting, he jerked the wheel and the whole truck spun around in the road and, uh, I reached up to . . . grab . . . [a] handle to brace myself and the next thing I know we slammed backwards and I blacked out and the next thing I'm coming to and I'm on the ground behind the truck.

*Id.* at 16–17.

Caudill later clarified that he owned the vehicle Bailey was driving and had control "[a]s far as giving permission or allow[ing] [people] to drive [it]." *Id.* at 38. Caudill then testified that both he and Bailey had been drinking that day, and in response to the question "[y]ou pretty well drank all

day, hadn't you?", Caudill responded "Pretty much." *Id.* at 39.[2] Bailey sustained serious injuries in the accident.

On June 27, 2000, Bailey and his wife filed a negligence suit against Caudill. On August 12, 2003, Bailey filed a Motion for Joinder of Necessary Party and Motion to Amend Complaint in order to add State Farm, whom Bailey alleged was liable for damages caused by Caudill pursuant to the underinsured motorist provision of Bailey's insurance policy. On October 7, 2003, Caudill was dismissed, with prejudice, as a party to the lawsuit. In the initial complaint and in the amended complaint including State Farm, Bailey alleged that Caudill had been driving the truck at the time of the accident. On September 23, 2005, Bailey filed another motion to amend complaint. In this third amended complaint, Bailey deleted the phrase "and the vehicle he was operating" from the following allegation: "That Matthew Caudill and the vehicle he was operating at the time of the accident, were underinsured by the terms of the policy issued by the Defendant, [State Farm], and that the Defendant, [State Farm], is liable to the Plaintiff for the injuries and damages suffered in said accident." Appellant's App. at 106. This Third Amended Complaint still contained the allegation that Bailey "was in a vehicle . . . that was being driven by Matthew Caudill." *Id.* at 108.

On January 16, 2007, a jury trial commenced. Following voir dire, State Farm moved for, and was granted, a motion in limine prohibiting Bailey from presenting evidence regarding a theory of negligent entrustment. On January 18, 2007, following the introduction of evidence, Bailey filed a Motion to Amend Pleadings to Con-

---

**2.** It is not clear from the context of the questioning whether "you" refers to solely Caudill or to Caudill and Bailey.

form to the Evidence, seeking to add an allegation that Caudill had negligently entrusted Bailey with the truck. The trial court denied this motion. Bailey also tendered the following jury instruction on negligent entrustment:

> If you determine from the evidence that Noah Bailey was driving the vehicle at the time of the accident, then you shall consider whether the tortfeasor, Matthew Caudill, negligently entrusted his vehicle to Noah Bailey. In determining whether or not Matthew Caudill negligently entrusted his vehicle to Noah Bailey, Noah Bailey must show by a preponderance of the evidence all of the following elements.
>
> (1) Matthew Caudill entrusted his truck;
>
> (2) to an incapacitated person or one who is incapable of using due care;
>
> (3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment;
>
> (4) that the entrustment was the proximate cause of an injury; and
>
> (5) that damages resulted from the entrustment

*Id.* at 45. The trial court refused to give this instruction.

The jury returned a verdict indicating that it found Bailey fifty-one percent at fault and Caudill forty-nine percent at fault. The trial court subsequently entered judgment in favor of State Farm. On February 16, 2007, Bailey filed a Motion to Correct Errors, arguing that the trial court improperly denied Bailey's motion to conform the pleadings to the evidence. On April 16, 2007, the trial court held a hearing on this motion. On April 26, 2007, the trial court issued an order denying the motion. Bailey now appeals.

*Discussion and Decision*

I. Motion to Amend the Pleadings To Conform to the Evidence

A. Standard of Review

 Amendments to conform the pleadings to the evidence presented at trial are governed by Indiana Trial Rule 15(B), which states:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The rationale behind this rule "is to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set forth by the pleading." *Curtis v. Clem,* 689 N.E.2d 1261, 1264 (Ind.Ct.App.1997). A party's ability to amend the pleadings is broad but is not without limitation. *See Showalter v. Brubaker,* 650 N.E.2d 693, 701 (Ind.Ct.App.1995). "A party should be able to amend where 'the facts are sufficiently pleaded to put the other party on

notice as to the evidence to be presented at trial.' " *Id.* (quoting *Bahre v. Metro. Sch. Dist.*, 400 N.E.2d 197, 201 (Ind.Ct. App.1980)). A party should also be permitted to amend its pleadings to change its theory of recovery if that theory is supported by the facts as presented at trial. *Id.* We have traditionally applied this rule liberally "to permit amendment of pleadings at any point in the proceedings where the parties have consented, as attested by the evidence admitted without objection, to a trial upon issues not raised by the pleadings." *Midway Ford Truck Ctr., Inc. v. Gilmore*, 415 N.E.2d 134, 137 (Ind.Ct.App. 1981). However, we have also recognized that the trial rule allowing amendment "was intended to permit amendment to the pleadings only when evidence on an unpleaded issue is 'unequivocally clear' to the opposing party but is nevertheless admitted without objection." *Elkhart County Farm Bureau Co-op. Ass'n, Inc. v. Hochstetler*, 418 N.E.2d 280, 285 (Ind.Ct.App. 1981) (quoting *Aldon Builders, Inc. v. Kurland*, 152 Ind.App. 570, 580, 284 N.E.2d 826, 832 (1972)). Also, a trial court should not grant a motion to amend where "the objecting party establishes that amendment would prejudice him in maintaining his action or defense." *Colonial Mortgage Co. of Ind., Inc. v. Windmiller*, 176 Ind.App. 535, 542 n. 3, 376 N.E.2d 529, 534 n. 3 (1978). We review a trial court's ruling on a motion to amend the pleadings

to conform to the evidence for an abuse of discretion. *See Schoemer v. Hanes & Assocs., Inc.*, 693 N.E.2d 1333, 1340 (Ind.Ct. App.1998).[3]

■ Here, Bailey sought to amend the pleadings to include a claim for negligent entrustment. As a threshold requirement, we must determine whether sufficient evidence was introduced at trial to support the elements of such a claim. *Cf. Executive Builders, Inc. v. Trisler*, 741 N.E.2d 351, 356 (Ind.Ct.App.2000) (holding trial court properly denied a motion to amend where evidence was not introduced to support all the necessary elements of the claim sought to be added), *trans. denied, cert. denied,* 534 U.S. 1081, 122 S.Ct. 814, 151 L.Ed.2d 698 (2002). In order to support a claim of negligent entrustment regarding a vehicle, a plaintiff must demonstrate that another: "(1) entrusted her car; (2) to an incapacitated person or one who is incapable of using due care; (3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment; (4) proximate cause; and (5) damages." *Davidson v. Bailey*, 826 N.E.2d 80, 88 (Ind.Ct.App.2005). State Farm argues that insufficient evidence exists to support a finding that Caudill had actual and specific knowledge that Bailey was incapacitated.[4] We agree.

---

**3.** In *Schoemer*, we recognized that one of our cases indicated that a trial court is required to allow amendment unless the objecting party is able to demonstrate prejudice caused by the amendment. 693 N.E.2d at 1340 (citing *Bank of N.Y. v. Bright*, 494 N.E.2d 970, 974 (Ind.Ct.App.1986)). In addition to the vast majority of our decisions indicating that abuse of discretion is the proper standard, see *Schoemer*, 693 N.E.2d at 1340; *Eckart v. Davis*, 631 N.E.2d 494, 498 (Ind.Ct.App. 1994); *Turner v. Town of Speedway*, 528 N.E.2d 858, 861 (Ind.Ct.App.1988); *Lewis v. Davis*, 410 N.E.2d 1363, 1366 (Ind.Ct.App. 1980); cf. *Ayr–Way Stores, Inc. v. Chitwood*,

261 Ind. 86, 91, 300 N.E.2d 335, 339 (1973) ("Whether or not to grant a continuance where pleadings are amended is a matter of discretion for the trial court."), we agree with the reasoning put forth in *Schoemer*, that the text of the rule indicates that the trial court "may" permit a party to amend the pleadings, indicating "a permissive condition of discretion," 693 N.E.2d at 1340.

**4.** We therefore find it unnecessary to address whether sufficient evidence was introduced to support the other elements, but note that the issue of proximate cause may also have been difficult to prove based on the record before

Before discussing this lack of evidence, however, we address suits for negligent entrustment of a vehicle brought by the entrustee. It is clearly the law in Indiana that a third party has a cause of action for negligent entrustment against an entrustor when injured by an incapacitated driver. *See Davidson,* 826 N.E.2d at 88. However, no Indiana case has squarely addressed the issue of whether the incapacitated driver may bring a first-party claim for negligent entrustment. Courts in California, Colorado, Florida, and Illinois have held that a plaintiff who drives while intoxicated may maintain a suit for negligent entrustment. *See Blake v. Moore,* 162 Cal. App.3d 700, 208 Cal.Rptr. 703, 707 (Cal.Ct. App.1984) (holding the defendant was entitled to a trial where the trier of fact would weigh the "defendant's fault in entrusting his car to plaintiff with knowledge of the intoxication, and the fault of plaintiff in drinking and then driving"); *Casebolt v. Cowan,* 829 P.2d 352, 359 (Colo.1992) (citing the Restatement (Second) of Torts § 390 for the proposition that the entrustee can recover from the entruster on a theory of negligent entrustment); *Gorday v. Faris,* 523 So.2d 1215, 1218 (Fla.Ct.App. 1988), *review denied; King v. Petefish,* 185 Ill.App.3d 630, 133 Ill.Dec. 636, 541 N.E.2d 847, 852 (Ill.Ct.App.1989) (citing the Restatement § 390). On the other hand, courts in South Carolina, New York, and North Carolina have held that no such cause of action exists. *Good v. MacDonell,* 149 Misc.2d 315, 564 N.Y.S.2d 949, 953 (N.Y.App.Div.1990) ("[T]here is no common-law action recognized in New York allowing a person to recover against another grounded on his own intoxication."); *Meachum v. Faw,* 112 N.C.App. 489, 436 S.E.2d 141, 145 (1993) (holding that "the decedent's own negligence in driving while voluntarily intoxicated rose to the level of the defendant's negligence in entrusting the automobile to her, and that the plaintiff's complaint therefore failed to state a claim upon which relief could be granted"); *Lydia v. Horton,* 355 S.C. 36, 583 S.E.2d 750, 752–53 (2003) (holding that, as a matter of law, one who loans his car to an intoxicated person who subsequently injures himself is not more than fifty-percent at fault).

Policy considerations have been advanced on both sides of the issue. On the one hand, the Colorado supreme court has determined that "voluntary intoxication is socially undesirable conduct and that individual responsibility to refrain from such conduct should be promoted," but that "[t]hese considerations . . . cannot be permitted to obscure the fact that a vehicle owner who has the right and ability to control the use of the vehicle and takes no action to prevent the continued use of the vehicle by a borrower who the owner knows is likely to operate the vehicle while intoxicated is also engaged in morally reprehensible behavior that should be discouraged." *Casebolt,* 829 P.2d at 362. On the other hand, in explaining why an intoxicated driver should not have a first-party claim for negligent entrustment, the New

us. *Cf. Booker, Inc. v. Morrill,* 639 N.E.2d 358, 363 (Ind.Ct.App.1994) (recognizing that under Indiana's Dram Shop Act, a plaintiff must establish that his intoxication "was 'that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produce[d] the result complained of and without which the result would not have occurred.'" (quoting *Orville Milk Co. v. Beller,* 486 N.E.2d 555, 559 (Ind.Ct.App.1985)));

*Efird v. Hubbard,* 151 N.C.App. 577, 565 S.E.2d 713, 716 (2002) ("Mere proof that a motorist involved in a collision was under the influence of an intoxicant at the time does not establish a causal connection between his condition and the collision. His condition must have caused him to violate a rule of the road and to operate his vehicle in a manner which was a proximate cause of the collision.").

York appellate court stated the principle that "an intoxicated person should not generally be permitted to benefit from his or her own intoxication." *Shultes v. Carr,* 127 A.D.2d 916, 512 N.Y.S.2d 276, 277 (N.Y.App.Div.1987).

We recognize that the Colorado supreme court's rationale is entirely appropriate when applied to situations in which innocent third-parties are injured. However, we do not find the rationale as compelling when applied to first-party claims, as the act of entrusting a vehicle to an intoxicated person is already discouraged by the imposition of a duty to third parties. We do not believe that allowing drunk drivers to recover from those who allow them to drive drunk significantly furthers the already existing public policy against drunk driving. As one commentator has argued, denying those who drive another's vehicle while intoxicated the ability to be compensated by the entrustor "properly distributes the incentive to control irresponsible drinking between the entrustor and the entrustee," and "will encourage personal autonomy and responsibility rather than dependency and paternalism."[5] Kayce H. McCall, Note, *Lydia v. Horton: You No Longer Have To Protect Me From Myself,* 55 S.C. L. REV. 681, 694 (2004).

 We also note that our legislature has implied that one who drives while intoxicated is inherently more culpable than one who permits another to drive while intoxicated, as the offense of driving under the influence is at the minimum a Class C misdemeanor, Ind.Code § 9–30–5–1, while the offense of permitting the unlawful use of a vehicle is a Class C infraction, Ind. Code § 9–24–18–4. It would seem to follow that one who drives while intoxicated is generally more at fault than one who permits another to drive while intoxicated. *See* Ind.Code § 34–51–2–6 ("[T]he claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages."). Based on these considerations, we conclude that Indiana does not recognize a first-party cause of action for negligent entrustment of a motor vehicle to a voluntarily intoxicated adult.

 Even if such a cause of action did exist in Indiana, we would still find insufficient evidence to support such a claim in this case. With regard to the entrustor's knowledge of the entrustee's incapacitation, "Indiana follows a strict version of this rule, requiring that the actor have actual knowledge that the driver is intoxicated at the time he entrusts the car to him." *Sports, Inc. v. Gilbert,* 431 N.E.2d 534, 537 (Ind.Ct.App.1982). "[E]vidence which reveals that the owner could have known or should have known of the driver's unfitness to drive is not sufficient under present law to impose liability." *Stocker v. Cataldi,* 489 N.E.2d 144, 145 (Ind.Ct.App.1986) (opinion on reh'g), *trans. denied.*

 When Bailey's counsel asked Caudill whether he knew Bailey was intoxicated, State Farm requested to approach the bench, where a sidebar conference was held. Following the conference, Bailey's counsel proceeded on to questions regarding the 911 call placed for an ambulance. Therefore, no direct evidence of Caudill's knowledge exists. However, we recognize that in deciding whether Caudill knew Bailey was incapacitated, a jury would be permitted to make inferences from circumstantial evidence. *See Davidson,* 826

---

5. We recognize that the same rationale would not apply to situations where a vehicle's owner entrusts to the vehicle to someone who is *involuntarily* incapacitated or otherwise unable to exercise due care in

N.E.2d at 89; *cf. Ward v. D & A Enters. of Clark County, Inc.*, 714 N.E.2d 728, 729–30 (Ind.Ct.App.1999) (applying Indiana Dram Shop Act [6]). Whether sufficient evidence exists to support a finding that Caudill actually knew Bailey was incapacitated may be resolved as a matter of law. *See Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 974 (Ind.1999) (under the Dram Shop Act, "[w]here ... there is insufficient evidence to support actual knowledge, the issue may be resolved as a matter of law"). Here, Caudill's testimony reveals that Bailey had alcoholic beverages during the day, but does not indicate how much alcohol Bailey had consumed or the amount of time that had passed since Bailey's last drink. *See id.* (holding insufficient evidence existed to establish dram shop liability where evidence existed that a guest at a fraternity party had drank alcoholic beverages at the party, but "there is no evidence that [the guest] exhibited visible signs of intoxication for [the server] to notice"); *Muex v. Hindel Bowling Lanes, Inc.*, 596 N.E.2d 263, 266 (Ind.Ct.App.1992) (holding insufficient evidence to establish servers knew patrons were intoxicated where the group drank "several" pitchers of beer, and no complaints regarding the group's behavior were made); *Williams v. Ngo*, 289 Ga. App. 44, 656 S.E.2d 193 (Ga.Ct.App., 2007)

(affirming summary judgment where evidence did not support finding that passenger knew of driver's inability to drive, even though he knew he had been drinking); *cf. Wagner v. Zboncak*, 111 Ill.App.3d 268, 66 Ill.Dec. 922, 443 N.E.2d 1085, 1087 (1982) (recognizing that in regard to the admission of evidence in a negligence action arising out of a car accident, "[e]vidence of drinking is so prejudicial that more than mere drinking must be shown; actual intoxication with impairment of physical or mental capabilities is required"). There was no evidence of the amount of alcohol consumed or Caudill's observations of Bailey's level of intoxication. *Cf. Sutton v. Sanders*, 556 N.E.2d 1362, 1366 (Ind.Ct. App.1990) (holding issue of fact existed regarding vehicle owner's knowledge of driver's intoxication existed where five people had consumed two cases of beer in the three hours preceding the accident, and owner testified he "didn't feel like [the driver] had that much to drink. He did, but I think he could drive"). In sum, Caudill's testimony does not even indicate that Bailey was intoxicated, much less that Caudill knew Bailey was intoxicated. *Cf. Brewster v. Rankins*, 600 N.E.2d 154, 159 (Ind.Ct.App.1992) ("[Student] had not displayed any signs of carelessness or dangerous behavior in classes ... so there was no way that Teacher or School could

---

**6.** Under the Indiana Dram Shop Act, Indiana Code section 7.1–5–10–15.5:

(b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:
(1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and
(2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

(c) If a person who is at least twenty-one (21) years of age suffers injury or death proximately caused by the person's voluntary intoxication, the:
(1) person;
(2) person's dependents;
(3) person's personal representative; or
(4) person's heirs;
may not assert a claim for damages for personal injury or death against a person who furnished an alcoholic beverage that contributed to the person's intoxication, unless subsections (b)(1) and (b)(2) apply.

have had actual and specific knowledge that [Student] was incapable of exercising due care in this circumstance, even if we were to find that [Student] was incapable of exercising such care, which we do not hold.").

Also, the fact that an accident occurred is not sufficient evidence from which one could find that Caudill had actual knowledge that Bailey was incapacitated. *See Murdock v. Fraternal Order of Eagles,* 779 N.E.2d 964, 969 (Ind.Ct.App.2002) (holding that evidence that a driver got in an accident was insufficient to establish that a bartender "had actual knowledge that [the driver] was visibly intoxicated when she furnished him with alcoholic beverages"), *trans. denied.*

As we conclude that Indiana does not recognize a cause of action for negligent entrustment brought by a voluntarily intoxicated adult entrustee, and that even if it did, the evidence in this case is insufficient to support a finding that Caudill actually knew Bailey was incapacitated, we necessarily conclude that the trial court did not abuse its discretion in denying Bailey's motion to conform the pleadings to the evidence.

### II. Jury Instructions

Bailey next argues that the trial court improperly refused to give tendered Instruction 14, which instructed the jury on negligent entrustment. When we review a trial court's refusal to give an instruction, "we must determine whether: 1) the instruction correctly states the law; 2) the evidence in the record supports giving the instruction, and 3) the substance of the instruction is covered by other instructions." *Hoosier Ins. Co. v. N.S. Trucking Supplies, Inc.,* 684 N.E.2d 1164, 1173 (Ind.Ct.App.1997). We review a trial court's decision to give or refuse to give an instruction for an abuse of discretion. *See Griffin v. Acker,* 659 N.E.2d 659, 662 (Ind.

Ct.App.1995), *trans. denied.* Even if a trial court abuses its discretion in refusing to give an instruction, such a refusal "is not presumed fatal and will constitute reversible error only when substantial rights have been adversely affected." *Id.*

As we have already determined that the evidence does not support a theory of negligent entrustment, we necessarily conclude that the trial court acted within its discretion in refusing to give the instruction. However, we also wish to comment on the parties' arguments regarding whether Bailey has waived this argument by failing to provide this court with the instructions actually given by the trial court.

Citing cases indicating that a trial court may properly refuse to give an instruction if its substance is adequately covered by the other instructions, State Farm argues that Bailey has waived this argument. *See* Appellee's Brief at 17 (citing *Adams v. State,* 539 N.E.2d 985, 987 (Ind.Ct.App.1989)). In *Adams,* a criminal defendant challenged the trial court's refusal to give an instruction, but failed to include the final jury instructions in the record; we held the defendant had waived the issue, "[a]s the final jury instructions are not included in the record on appeal, it is impossible for us to consider [the refused instruction] in reference to the other jury instructions." *Id.* We based this conclusion on the fact that "no single jury instruction should be evaluated separately from all the instructions given to the jury." *Id.* The same principle applies in civil cases:

It is a well settled rule in Indiana that the trial court may properly refuse requested instructions on any or all phases of the case, although the requested instructions announced correct rules of law, where the propositions therein stat-

ed, as far as applicable to the facts of the case, are covered adequately, sufficiently or fully, or where the substance of the instruction is included in the instructions given, or the instructions actually given fully and fairly present the case to the jury. Thus it is proper for the court to refuse an instruction which merely varies the language of a given instruction. There is no necessity for repetition and duplication of instructions or for restatement of the same proposition in other language.

*Hoosier Ins. Co.*, 684 N.E.2d at 1173 (quoting *Prudence Life Ins. Co. v. Morgan*, 138 Ind.App. 287, 302, 213 N.E.2d 900, 909–10 (1966)).

Bailey argues that his failure to include the given instructions should not matter, as he claims "[t]he situation here is not the usual case where an instruction is refused because it is covered by other instructions or that is not a correct statement of the law," and that "[i]t is fairly obvious that no other instructions were permitted that even hinted that if Noah Bailey was the driver of the truck, then Matthew Caudill negligently entrusted his vehicle to Noah." Appellant's Reply Brief at 10. Although it may be obvious to Bailey that no other instructions covered the issue, it is not obvious to this court, which has not seen the other instructions. *Cf. In re Pepper*, 700 N.E.2d 253, 257 (Ind.Ct.App.1998) ("Matters outside the record cannot be considered by this court on appeal. We must decide the case on the record before us, and cannot speculate as to the actual facts of the case."). We do not have before us the portion of the transcript where the trial court refused the instruction, so

we have little direct insight as to its reasoning.[7]

Again, Bailey's failure to include the final instructions has no effect on the ultimate result, as we conclude that insufficient evidence exists to support the instruction. We discuss the holistic nature of our review of jury instructions only to emphasize the importance of including all such instructions in the record on appeal.

*Conclusion*

We conclude the trial court acted within its discretion in denying conform the pleadings to the evidence and in refusing to give Bailey's tendered jury instruction on negligent entrustment. Bailey's motion to

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

7. Bailey included in his appendix a Trial Minutes Order, indicating merely "Final instructions are settled. Defendant objects to Plaintiff's Final Instruction 14, negligent entrustment, and stipulates to the giving of the remaining instructions. Court refuses Plaintiff's Final Instruction 14." Appellant's App. at 35.